UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONTIE S. MITCHELL, and those similarly
situated,

                                        Plaintiffs,

        v.                                                          9:19-CV-0718
                                                                    (MAD/ML)

ANTHONY J. ANNUCCI, et. al.,

                                        Defendants.

_____

APPEARANCES:

DONTIE S. MITCHELL
98-A-0071
Plaintiff, pro se
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

        The Clerk has sent to the Court for review a pro se civil rights complaint filed by

plaintiff Dontie S. Mitchell ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") and the

Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§

2000cc *et seq*., asserting claims arising out of his confinement in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS").  Dkt. No. 1

("Compl.").  Plaintiff, who has not paid the statutory filing fee, seeks leave to proceed in forma

pauperis. Dkt. No. 6 ("IFP Application").[1] Plaintiff also filed a motions for preliminary injunctive relief (Dkt. No. 3), the appointment of counsel (Dkt. No. 2), and for courtesy copies of pleadings and motions for service (Dkt. No. 9).[2]

According to the Federal Judiciary's Public Access to Court Electronic Records ("PACER"), Plaintiff has filed eight civil rights cases in district courts within the Second Circuit and four appeals in the Second Circuit prior to filing the case now before the court. Of relevance herein are: *Mitchell v. Fisher, et. al.*, No. 6:06-CV-6197, Dkt. No. 1 (W.D.N.Y. filed April 14, 2006) ("*Mitchell I*"); *Mitchell v. New York State Dep't of Corr. Srvcs.*, No. 6:06-CV-6278, Dkt. No. 1 (W.D.N.Y. filed June 7, 2006) ("*Mitchell II*") and *Mitchell v. Cuomo, et. al.*, No. 9:17-CV-0892 (TJM/DJS), Dkt. No. 1 (N.D.N.Y. filed Aug. 14, 2017) ("*Mitchell III*")

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[3]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from

---

[1]     On June 24, 2019, the Court administratively closed this case due to Plaintiff's failure to submit a an IFP Application. Dkt. No. 5.  The Court reopened the case after Plaintiff submitted a complete IFP application.  Dkt. Nos. 6, 7.

[2]     Plaintiff also filed a letter in further support of his motion for counsel and for preliminary injunctive relief.  Dkt. No. 10.

[3]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g).  The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. *See* Dkt. No. 4. Accordingly, the Court grants Plaintiff's IFP Application.

## III.   SUFFICIENCY OF THE COMPLAINT

### A.   Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[4]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

---

[4]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

4

Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## B.    Summary of the Complaint

The incidents that form the foundation for the Complaint occurred while Plaintiff was confined at Great Meadow Correctional Facility ("Great Meadow C.F."). *See generally*, Compl. The following facts are set forth as alleged by Plaintiff in his Complaint.

During his confinement at Great Meadow C.F., Plaintiff was subjected to a "policy and culture of retaliation" that deterred inmates from filing grievances. Compl. at 14-16. In 2018, Plaintiff requested permission to become a member of the Inmate Liaison Committee ("ILC") and Inmate Grievance Resolution Committee ("IGRC"). Although Plaintiff was qualified for the positions, Defendant Superintendent Christopher Miller ("Miller") denied Plaintiff's requests because Plaintiff was outspoken and filed grievances. *Id*. at 13, 18.

### 1.    Ujamaa Fraternal Dynasty ("UFD")

On February 16, 2018, Plaintiff filed a "Request for Approval to Form an Inmate Organization" at Great Meadow C.F. Compl. at 6-7, Dkt. No. 3-2 at 1-4.[5] Plaintiff sought to form a prison chapter of the UFD, a non-profit organization, which Plaintiff founded, as an alternative to gangs. Compl. at 3-6; *see Mitchell III,* 2019 WL 1397195, at *2 (N.D.N.Y. Mar. 28, 2019). Upon Miller's recommendation, defendant Deputy Commissioner Jeff McKoy ("McKoy") denied Plaintiff's request. Compl. at 7; Dkt. No. 3-2 at 5.

---

[5]      Plaintiff references documents in the Complaint. Although the Complaint as filed does not include these exhibits, the documents were filed as exhibits in support of Plaintiff's motion for injunctive relief. *See* Dkt. No. 3. The Complaint and motion were filed on the same day.

On May 31, 2018, Plaintiff submitted a second request to form the UFD.  Compl. at 8; Dkt. No. 3-2 at 7-34.  Plaintiff did not receive a response to his second request.  Compl. at 8.

### 2.    Religious Claims

DOCCS requires inmates to "designate" a religion prior to participating in classes or services.  Compl. at 10.  Inmates may however, seek permission to attend three classes, per year, of another religion.  *Id.*  DOCCS Directive 4202, Section VI(B)(3) provides, in pertinent part:

> Ordinarily an inmate may attend only the religious programs of his or her designated religion as noted in facility records. However, it is acceptable for those who desire to learn more about the religious practices of another faith to request permission to attend up to three classes/services per year from the Chaplain of that faith group.

Compl. at 10; *see also* www.doccs.ny.gov/directives/4202.pdf (last visited July 9, 2019).

While DOCCS permits inmates to change their religious designation, prisoners are only permitted to change their religion at twelve-month intervals.  Compl. at 10, 11; *see also* DOCCS Dir. 4202, Section VIII.  Additionally, DOCCS does not permit inmates to proselytize. Compl. at 10.

Twenty years ago, Plaintiff began practicing the Shetaut Neter religion.  Compl. at 10. At Plaintiff's request, Miller allowed Plaintiff and other prisoners to form a Shetaut Neter religious study group.  *Id.* at 9.  Defendant Imam Elmi ("Elmi") ignored requests from inmates to change their religious designation to Shetaut Neter and threatened to delay responding to requests if Plaintiff complained to Miller.  *Id*. at 11.  Plaintiff wrote letters to Annucci, Miller, and defendant Assistant Superintendent David Barringer ("Barringer") complaining about Elmi's discriminatory behavior.  *Id*. at 11, 12.  Defendants failed to respond.  Compl. at 11-12.

6

While Plaintiff pioneered the efforts related to the approval of Shetaut Neter and met the qualifications for Inmate Facilitator, Miller and Elmi appointed another inmate as the facilitator. *Id*. at 13.

### 3. Grooming

DOCCS Directive 4914, dated May 8, 2019, encapsulates DOCCS' grooming policy. Of relevance, section III(D)(2) provides, in pertinent part:

> The only braids allowed are the corn row style. Corn row braids may only be woven close to the scalp in straight rows from the forehead to the back of the neck, and braids may not extend beyond the hairline. No designs or symbols may be woven into the hair.

*See* www.doccs.ny.gov/directives/4914.pdf (last visited July 9, 2019).

In accordance with the policy, Annucci and Miller prohibited Plaintiff from wearing his hair in "box braids" or "designer corn rows" that extended beyond the nape of his neck. Compl. at 12. Plaintiff removed his corn rows after he was repeatedly threatened by staff members. *Id*. Plaintiff filed a grievance related to the grooming policy, but the complaint "disappeared." *Id*.

### 4. Causes of Action and Requests for Relief

Construed liberally,[6] the Complaint contains the following First Amendment claims: (1) violations of Plaintiff's right to free association related to the UFD; (2) violations of Plaintiff's

---

[6] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

religious rights under the Free Exercise Clause; (3) violations of Plaintiff's right to petition; and (4) retaliation claims. *See generally*, Compl. Plaintiff also asserts RLUIPA claims and alleges that Annucci allows DOCCS' facilities to impose a "ban" on all printed materials from social media websites. *See id.* at 16. Plaintiff seeks injunctive relief and punitive damages against Miller, Barringer, and Elmi for retaliating against Plaintiff in violation of his First Amendment rights. *See id.* at 20. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## IV. ANALYSIS

### A. First Amendment - Freedom of Association

"[A] prison inmate retains those First Amendment rights that are not inconsistent with

8

his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls." *Jones v. N. Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 125–26 (1977) (holding that the inmate's status as a prisoner and the operational realities of a prison dictate restrictions on the associational rights among inmates). While "there is no generalized constitutional right of social association, [t]he freedom of 'expressive association,' [. . .], 'protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, exercise of religion, or petitioning for the redress of grievances. These are the so-called 'political' associational rights.' " *Jackson v. Goord*, No. 06-CV-6172, 2011 WL 4829850, at *10 (W.D.N.Y. Oct. 12, 2011) (citing, *inter alia, Dickman v. Mangiaracina*, 199 F.3d 1321, 1999 WL 980966 at *2 (2d Cir. 1999) (unpublished).

Here, Plaintiff claims that Annucci, Miller, and McKoy violated his constitutional rights when they prohibited Plaintiff from promoting and organizing the UFD at Great Meadow C.F. *See* Compl. at 17. At this juncture, the Court is not charged with determining whether Plaintiff's claim has merit. Based upon the pleadings, Plaintiff has sufficiently stated a First Amendment claim against Annucci, Miller, and McKoy, related to his freedom to associate, to survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. *See Shakur v. Selsky*, 391 F.3d 106, 122 (2d Cir. 2004) (holding that the plaintiff stated a legally sufficient claim that the confiscation of his "New Afrikan political literature" violated the First Amendment); *see also Mitchell I,* Compl. and Order, Dkt. Nos. 6,

9

79 (W.D.N.Y. filed May 4, 2006 and April 17, 2012) (allowing Plaintiff to proceed with his First Amendment freedom of association claim related to the New Afrikan Collectivists Association); *see also Mitchell III,* Decision and Order, Dkt. No. 13 (N.D.N.Y. filed Sept. 27, 2017) (allowing Plaintiff to proceed with his First Amendment freedom of association claim related to promoting the UFD at Clinton Correctional Facility).

### B.    First Amendment Free Exercise and RLUIPA

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id*. (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).  A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[7]  A religious belief is "sincerely held" when the

---

[7]     The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div*., 494 U.S. at 887); *see also Williams v. Does*, 639 Fed. Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise

plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a) (2012). Courts analyzing RLUIPA claims use the First Amendment "sincerely held religious beliefs" standard to determine whether a plaintiff was engaged in a "religious" exercise. *See Sioleski v. McGrain*, No. 10-CV-0665S, 2012 WL 32423, at *2, n. 2 (W.D.N.Y. Jan. 5, 2012) (citations omitted). There is no cognizable private right of action under RLUIPA against state officers sued in their individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013). Only injunctive relief is available under RLUIPA and RLUIPA does not authorize monetary damages against state officers in their official capacities. *Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013); *see also Sossamon v. Texas*, 563 U.S. 277 (2011).

### 1.    Shetaut Neter

Plaintiff claims that DOCCS' policies related to proselytizing, attendance at classes of

---

claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

different faiths, and changes in religious designation interfered with his efforts to "spread awareness" about Shetaut Neter to other inmates. *See* Compl. at 10-11, 17. This conclusory assertion however, is unsupported by facts. To begin, the Complaint lacks facts related to when and where Plaintiff was prohibited from proselytizing or facts suggesting that Plaintiff attempted to attend classes outside his faith or change his religious designation. As Plaintiff does not appear to have suffered any actual injury due to the application of these policies, he lacks standing to challenge it. *See Mitchell II*, 2012 WL 6204205, at *11 (W.D.N.Y. Dec. 12, 2012).

Moreover, while "it is clear that preaching is a form of religious exercise," Plaintiff has not plead how his inability to proselytize to other inmates substantially burdened his religious rights. *See Spratt v. Rhode Island Dep't Of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007). Similarly, Plaintiff has not alleged facts suggesting that DOCCS' policy restricting the number of classes that an inmate may attend outside his faith or the number of times an inmate could change his religious designation placed a substantial burden on Plaintiff's religious rights. *See Crocker v. Durkin*, 159 F.Supp.2d 1258, 1276 (D. Kan. 2001) (finding that the plaintiffs presented no evidence of an inmate that wanted to change his religious preference but was not permitted to do so).

Even assuming, for the purposes of this review, that Plaintiff's religious beliefs were "sincerely held," as presently plead, the Complaint alleges no facts which would allow the Court to determine that Plaintiff's inability to "spread awareness about [Shetaut Neter's] teachings and to invite other prisoners to attend Shetaut Neter classes," (*see* Compl. at 11) placed a substantial burden on his religion or, in other ways, prevented him from practicing his religion. *See Mitchell II,* 2012 WL 6204205, at *11 (W.D.N.Y. Dec. 12, 2012) (dismissing

12

Plaintiff's First Amendment claim based upon the defendants refusal to allow him to participate, whenever he chooses, in other religions); *see also Tyler v. Ray*, No. 9:17-CV-1471, 2018 WL 4017684, at *10 (D.S.C. July 27, 2018) (finding that restrictions on inmate's attempt to proselytize to fellow inmates during his recreation time does not place a "substantial burden" on the exercise of Plaintiff's religious rights) *appeal dismissed*, No. 18-7081, 2018 WL 7501258 (4th Cir. Sept. 13, 2018) ).  Simply put, Plaintiff's claim arising out of the alleged refusal to allow him to promote Shetaut Neter does not plausibly suggest a sufficiently serious deprivation to state a free exercise claim.

Accordingly, Plaintiff's First Amendment and RLUIPA claims based upon his freedom to practice his religion are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.

## 2.     Grooming

Plaintiff claims that DOCCS' policy prohibiting "designer corn rows" violates his right to free expression as guaranteed under the First Amendment.  *See* Compl. at 12, 18.   Plaintiff's freedom of expression claims are cognizable under the First Amendment's Free Exercise Clause.  *See Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *31 (S.D.N.Y. Feb. 16, 2017).

Here, Plaintiff alleges that the grooming policy is unconstitutional but does not allege that the policy impacted his right to freely practice his religion.  Indeed, Plaintiff has not plead any facts suggesting that he sought to maintain his long hair in braids as part of his religious expression or beliefs.  Accordingly, Plaintiff's First Amendment claim based upon DOCCS' grooming policy is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28

U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted. *See Betts v. McCaughtry*, 827 F.Supp. 1400, 1408 (W.D. Wis. 1993), *aff'd*, 19 F.3d 21 (7th Cir. 1994) (reasoning that the plaintiffs failed to articulate what message, if any, was intended by wearing sunglasses or caps indoors or explained that the wearing of long fingernails expresses a specific belief) (collecting cases); *see also Smith v. Bennett*, No. CV04-594, 2005 WL 1660824, at *2 (D. Idaho July 12, 2005) ("The Court is unaware of any legal support for Plaintiff's claim that an inmate has a constitutional right to express himself through hair length.").

### D.    First Amendment - Petition

Plaintiff charges Annucci with allowing a policy and custom of discouraging inmates from filing complaints and grievances. *See* Compl. at 18.  It is well-established that a prison inmate has no constitutional right of access to an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Accordingly, Plaintiff's First Amendment freedom to petition claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure

to state a claim upon which relief may be granted.

**E.    First Amendment - Retaliation**

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).  The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.' " *Gill*, 389 F.3d at 381 (citation

omitted) (omission in original).  This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights.  *Id.*  Conduct that is de minimis does not give rise to actionable retaliation.  What is de minimis varies according to context.  *Dawes*, 239 F.3d at 493.  As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse."  *Dawes,* 239 F.3d at 491 (*quoting Thaddeus-X v. Blatter,* 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)).  If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes,* 239 F.3d at 493.

"[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  Here, Plaintiff claims that Miller, Barringer, and Elmi retaliated against him when they refused to allow him to organize the UFD, deprived him of the opportunity to participate in the ILC and the IGRC, and failed to select him as the Inmate Facilitator of the Shetaut Neter study group in retaliation for his "complaints and grievances."  *See* Compl. at 18.  While the filing of grievances and complaints is a protected First Amendment right (*see Davis*, 320 F.3d at 352–353), Plaintiff has failed to state or identify any specific grievances that he has filed on his own behalf prior to the start of the alleged retaliatory conduct.  Further, the Complaint lacks any dates suggesting a causal connection between any protected conduct and alleged retaliatory conduct.  Moreover, even assuming Plaintiff plead facts related to protected conduct and temporal proximity, the alleged retaliatory acts are not the type of "conduct that

would deter a similarly situated individual from exercising his constitutional right." *See Gill*,

389 F.3d at 381.  Refusing to appoint Plaintiff as an inmate representative in various

capacities is not an "adverse action" sufficient to garner constitutional protection.

Accordingly, Plaintiff's First Amendment retaliation claims against Miller, Barringer, and

Elmi are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §

1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff also claims that Annucci allowed a "systematic" policy and custom of

retaliation since 2016.  *See* Compl. at 15, 18.  Plaintiff alleges that inmates who filed

grievances are treated with hostility, abuse, and indifference in an attempt to deter them from

filing complaints.  *See id.* at 14-16.  Plaintiff alleges facts related to threats and harassment:

- On March 15, 2018, Plaintiff was admonished by the IGRC Supervisor and told to stop submitting grievances;

- On March 23, 2018, Plaintiff was summoned to a secluded area to "sign off" on a grievance;

- On May 7, 2019, Plaintiff was verbally harassed by the Second Floor School Officer and threatened with "lock up" because Plaintiff complained about abusive frisk procedures;

- On May 9, 2019, the law library supervisor threatened Plaintiff with, *inter alia*, retaliatory cell searches and mail watches, false misbehavior reports, and the denial of recreation, showers, food, telephones, and callouts if he continued to submit complaints.

*See* Compl. at 14-16.

In *Mitchell II*, Plaintiff asserted a similar claim against DOCCS' Commissioners alleging

that the defendants engaged in "systematic retaliatory treatment of inmates who have filed

grievances."  *See Mitchell II*, Dkt. No. 10 at 3-7.  In a Decision and Order filed in May 2007,

the Court found that the pleading in that action set forth satisfactory allegations related to retaliatory conduct and policy. *See id.*, Dkt. No. 12 at 2. Conversely, the pleading in the case before this Court lacks the specificity and detail that were contained in the Amended Complaint in *Mitchell II*. *Compare* Compl. *with Mitchell II*, Dkt. No. 10. Here, Plaintiff has not identified any of the individuals who allegedly threatened or verbally abused him or the complaints or grievances that perpetuated the alleged retaliatory behavior. Moreover, the alleged threats and harassment are not plead with sufficient specificity to constitute an adverse action. *See Barrington v. New York*, 806 F.Supp.2d 730, 746 (S.D.N.Y. 2011) (holding that verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific).; *Bartley v. Collins*, No. 05-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we are going to get you, you better drop the suit," do not rise to the level of adverse action).

Consequently, Plaintiff's First Amendment retaliation claims against Annucci are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Social Media Ban

Plaintiff alleges that Annucci imposed a "state-wide ban" on all printed materials, including photographs, from social media sites including Facebook, Twitter, and Instagram deeming such material "third party mail." *See* Compl. at 16. Plaintiff claims that the "unwritten" policy violates his First Amendment rights. *See id.* at 18-19.

In *Mitchell III*, Plaintiff alleged that DOCCS' Directive 4422, Inmate Correspondence Program, imposed a "blanket ban" on materials printed from social media, emails, and text messages. In *Mitchell III*, the defendants moved to dismiss this claim arguing that Plaintiff

18

failed to adequately plead that DOCCS promulgated a policy with a "blanket ban" on materials printed from social media, emails, and text messages. *See Mitchell III*, 2019 WL 2479611, at *7. The Court granted the defendant's motion to dismiss the claim holding

> While Plaintiff alleges that Directive 4422 imposes such a blanket ban, *see* Am. Compl. at ¶ 129, a review of the Directive fails to bear out his assertions. As Defendants' Motion makes clear, the Directive expressly allows inmates to receive printed material with correspondence. Defs.' Mem. of Law at p. 13 (citing Directive 4422). The Directive itself does not appear to contain the ban on social media materials alleged by Plaintiff and nothing in his opposition papers refutes Defendants' contention to the contrary or points to anything in the Directive specifically barring complete access to such materials. *See* Dkt. Nos. 61-1 & 61-2. Given the information now available, Plaintiff's conclusory allegation regarding this policy is insufficient to withstand the Motion to Dismiss.

*Mitchell III*, 2019 WL 2479611, at *7 (citations omitted).

Now, in an attempt to relitigate this issue, Plaintiff asserts that the "blanket ban" is an "unwritten policy" that violates his First Amendment rights. *See* Compl. at 16-17. Plaintiff has not plead that he suffered any actual injury due to the unwritten policy and thus, he lacks standing to challenge it. *See Mitchell II*, 2012 WL 6204205, at *11. For the reasons set forth herein and in *Mitchell III*, Plaintiff's claims related to the alleged social media ban are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### G. Requests for Relief

Plaintiff seeks injunctive relief ordering Defendants to: (i) allow Plaintiff to promote the UFD; (ii) allow Plaintiff to practice and "spread awareness" of Shetaut Neter without undue interference; (iii) repeal DOCCS' policy related to proselytizing and limiting the attendance at services of a religion with which an inmate is not registered to three times per year; (iv)

implement a policy allowing inmate facilitators of religious groups to encourage inmates to change their religious designation; (v) appoint Plaintiff inmate facilitator for the Shetaut Neter study class at Great Meadow C.F.; (vi) repeal DOCCS' policy disallowing designer corn rows; (vii) implement changes to the inmate grievance program; and (viii) repeal the "blanket ban" on social media material. *See* Compl. at 19-20. Plaintiff also seeks "punitive damages of $50,000" against Miller, Barringer, and Elmi for retaliating against him in violation of his First Amendment rights. *See id.* at 20. Defendants McKoy, Miller, Barringer, and Elmi have been sued in their individual and official capacities while Annucci has been sued in his official capacity only. *See id.* at 2.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298

(RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No.* 15-CV-00962, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom.*, 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted). However, "[t]o be entitled to permanent injunctive relief from constitutional violation, [a] plaintiff must first establish the fact of the violation, and then demonstrate the presence of continuing irreparable injury if the injunction does not issue, and the lack of adequate remedy at law[.]" *Newman v. State of Ala.*, 683 F.2d 1312 (11th Cir. 1982); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy

21

of refusing delivery of Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

Having dismissed Plaintiff's claims related to the Free Exercise Clause, RLUIPA, the right to petition, and retaliation, Plaintiff's requests for injunctive relief and punitive damages related to these claims are also dismissed.[8]

With respect to Plaintiff's First Amendment claim related to freedom of association, Plaintiff seeks an injunction ordering Annucci, McKoy, Miller, and Barringer to allow Plaintiff to possess and distribute UFD literature, promote and organize the UFD within (and without) DOCCS' facilities, and to form prison chapters of the UFD as approved inmate organizations. *See* Compl. at 19.

While it is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983 for monetary damages, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation, *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013), "district courts in this Circuit have held 'that the personal involvement requirement does not apply to bar actions . . . pursuant to § 1983 for injunctive relief against a state official.' " *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F.Supp.3d 50, 68 (E.D.N.Y. 2018) (quoting *Marinaccio v. Boardman*, No. 1:02-CV-00831, 2005 WL 928631, at *9 (N.D.N.Y. Apr. 19, 2005)).  However, "[u]nder *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the

---

[8]    Alternatively, Plaintiff's claim for "punitive damages of $50,000" pursuant to section 1983 against the Miller, Barringer, and Elmi in their official capacities (*see* Compl. at 2, 20) is barred by the Eleventh Amendment.  *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *see also Gowins v. Greiner*, No. 01 CIV. 6933, 2002 WL 1770772, at *4 (S.D.N.Y. July 31, 2002) (dismissing § 1983 for compensatory or punitive damages against DOCS and individual officers in their official capacities).

enforcement of the act' that is in continued violation of federal law." *Daily Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex Parte Young*, 209 U.S. at 154, 157)).  "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Id*.

At this juncture, Plaintiff has sufficiently alleged facts suggesting that Annucci, McKoy, Miller, Barringer, and Elmi have "a connection to, and [are] responsible for, the protection of Plaintiff's constitutional rights" as it relates to the claim that survives initial review. *See Wright v. Stallone*, No. 9:17-CV-0487 (LEK/TWD), 2018 WL 671256, at *7 (N.D.N.Y. Jan. 31, 2018). Accordingly, Plaintiff's request for injunctive relief, as it pertains to his First Amendment freedom of association claim, survives sua sponte review.

## V.      MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff moves for an Order (i) allowing him to promote the UFD within DOCCS' facilities and to form prison chapters of the UFD; (ii) permitting him to practice Shetaut Neter as the inmate facilitator; and (iii) directing Defendants to suspend the policies related to changes in religious designation, designer corn rows, and social media.  Dkt. No. 3 at 1-2. Plaintiff claims that he "face[s] up to 9 months in solitary confinement for using my UFD organization[.]" Dkt. No. 3-3 at 12; Dkt. No. 10 at 1.

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious

questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is "even higher." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (summary order) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley*, 559 F.3d at 118); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere

possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)); *Flack v. Friends of Queen Catherine Inc.*, 139 F.Supp.2d 526, 540 (S.D.N.Y. 2001) (holding that a presumption created in the context of a preliminary injunction only applies to prospective violations of the law).

As discussed *supra*, Plaintiff failed to sufficiently allege facts to establish a cause of action for a violation of his First Amendment rights related to his religious beliefs, DOCCS' grooming policy, his right to petition, and retaliation. Thus, Plaintiff cannot establish a likelihood of success on the merits of these claims and Plaintiff's requests for relief, related to these claims, is denied. *See Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint.") (internal quotation marks and citations omitted) ).

With respect to Plaintiff's motion for an order permitting him to promote and organize the UFD, that request is also denied. Plaintiff's fear that he "faces" solitary confinement in the future is purely speculative and, therefore, patently insufficient to show that he is likely to suffer imminent irreparable harm if the requested relief is not granted. *See e.g., Slacks v. Gray*, No. 9:07-CV-0501 (NAM/GJD), 2008 WL 2522075, at *1 (N.D.N.Y. June 25, 2008) (finding that allegations of future injury, without more, do not establish a real threat of injury) (citations omitted); *see also Agostini v. Backus*, No. 15-CV-6188, 2015 WL 1579324, at *3 (W.D.N.Y. Apr. 9, 2015) (reasoning that the plaintiff's concern about threats and future

25

retaliation, even if sincere, is speculative and insufficient to establish irreparable harm).  In his motion, Plaintiff has not plead facts related to any disciplinary proceeding, including the receipt of a misbehavior report, that would suggest that disciplinary confinement is imminent. Plaintiff cannot base his request for relief upon past conduct and the anticipation of future consequences.  *See Garcia v. Arevalo*, No. 93 CIV. 8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("Such a bare allegation of future injury does not demonstrate a real threat of actual injury. It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.") (citing *Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30 (2d Cir. 1991)).

Even assuming, for the purposes of the motion, that Plaintiff could establish irreparable harm, a party is not entitled to injunctive relief unless there is also proof of a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief.  *See Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992).  Plaintiff has failed to submit proof or evidence which meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief.  *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.*, 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").  Additionally, since no defendants have answered, and, indeed, have not been served, the Court cannot ascertain plaintiff's likelihood of success, or whether he has otherwise met the standard for issuance of preliminary injunctive relief.

Accordingly, Plaintiff's motion for preliminary injunctive relief (Dkt. No. 3) is denied.

## VI.  MOTION FOR APPOINTMENT OF COUNSEL AND CLASS CERTIFICATION

Plaintiff moves for counsel noting that some of his witnesses are prisoners in various correctional facilities. Dkt. No. 2. Plaintiff claims that counsel is required so that he may "marshal substantial evidence." *Id*.

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel.").[9] Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not

---

[9]      Actual appointment of counsel is contingent upon the availability of pro bono counsel to accept an appointment. "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, No. 93-CV-1449 (TJM) 899 F.Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."[10] *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

In this case at this preliminary stage, the Court is unable to determine whether Plaintiff meets the threshold requirement that at least some aspects of his claim are "likely to be of substance." *Hodge*, 802 F.2d at 61. Plaintiff has not submitted any evidence supporting his claims and Plaintiff's request for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector. *See Terminate Control Corp.*, 28 F.3d at 1341; *Cooper*, 877 F.2d at 172-74. Even if the Court were to assume, for purposes of this motion, that Plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; and (3) if this case survives any dispositive motions filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference.

The Court is not aware of any special reason why appointment of counsel in this case is warranted at this time and is mindful, as the Second Circuit has admonished that it must

---

[10]     The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296, 298 (1989). Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case. *See Mallard*, 490 U.S. at 298, 309.

be, of the scarcity of volunteer lawyers and the need to allocate that resource with the utmost care. *See Cooper*, 877 F.2d at 172 (noting that "[v]olunteer lawyer time is a precious commodity."). As discussed *supra*, Plaintiff provided a detailed Complaint with facts sufficient to survive this Court's sua sponte review. Thus, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the parties have undertaken discovery, Plaintiff may seek appointment of counsel and the Court may be better able to determine whether such appointment is warranted.

With respect to class certification, Plaintiff attempts to assert his claims on behalf of "all those similarly situated." *See* Compl. at 1, 2-3. Plaintiff describes the proposed class as "every prisoner in the custody of DOCCS," or who will be in DOCCS' custody who are (i) members, or inmates who "will become or want to become" members, of the UFD; (ii) inmates incarcerated at Great Meadow C.F. who are members, or "will become or wants [sic] to become members," of the Shetaut Neter faith; and (iii) inmates who wear, or "will wear or want to wear," their hair in box braids, designer corn rows, or corn rows that extend beyond the nape of their neck. *See id.* at 2-3.

Plaintiff is familiar with the procedure and relevant case law related to class certification having previously moved for certification in *Mitchell II and Mitchell III*. *See Mitchell III*, Dkt. No. 1at 1, 3, 26-28. In *Mitchell III*, the Court issued a Decision and Order filed on September 27, 2017 (the "September 2017 Order"), denying Plaintiff's motion to certify a class holding

> It is well settled that a class action cannot be maintained by a pro se litigant since non-attorneys may not represent anyone other than themselves. *Miller v. Zerillo*, No. 07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice

29

until an attorney makes an appearance); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998); 28 U.S.C. § 1654. Since Plaintiff is not an attorney, the request to have this matter class certified must be denied without prejudice for renewal in the event an attorney appears on Plaintiff's behalf.

Even assuming Plaintiff was appointed counsel, the motion would still be denied. To certify a class action, a plaintiff must establish the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Here, Plaintiff failed to provide any argument in favor of certification. Plaintiff's proposed class is "overly inclusive." *See Martin v. Coombe*, No. 94-CV-0091, 1995 WL 643379, at *2 (W.D.N.Y. Oct. 19, 1995) (denying the plaintiff's request to certify the class as "all inmates incarcerated at the Groveland Correctional Facility"). Without any facts to establish "numerosity, commonality, typicality, and adequacy," the Court cannot assess whether certification is appropriate. *See Justice v. King*, No. 08-CV-6417, 2015 WL 143303, at *7 (W.D.N.Y. March 27, 2015) (denying motion to certify due to the plaintiff's "failure to do little more than offer speculation about the numerosity of the purported class").

*Mitchell III*, Dkt. No. 13 at 32-33.

The motion before the Court suffers from the same deficiencies as the motion in *Mitchell III*. Thus, for the reasons set forth in the September 2017 Order in *Mitchell III*, Plaintiff's motion for class certification is denied.

## VII.   REQUEST FOR COPIES

Plaintiff asks the Court to direct the Clerk to "make the necessary copies" of his Complaint and motion papers. Dkt. No. 9. Section 1915, which governs in forma pauperis proceedings, does not state that indigent parties are entitled to complimentary copies of the materials contained in a court's files or any other file. "[T]he granting of in forma pauperis

status does not shift the entire financial burden of litigation either to the Court or to the opposing parties. . . a party is required to pay the costs of discovery, including the costs of obtaining copies of requested documents, despite the fact that he has been found to be indigent." *Orraca v. Lee*, No. 9:04-CV-1249 (DNH/DRH), 2007 WL 81921, at *1 (N.D.N.Y. Jan. 9, 2007); *Madison v. Hoey*, 2006 WL 2265016, at *3 (N.D.N.Y. Aug. 4, 2006) (indigent status does not entitle a party to free copies but instead must bear his or her own costs of litigation). Local Rule 5.4(a) is clear that in forma pauperis status does not relieve a party of the obligation to pay all other fees for which that party is responsible regarding the action, including but not limited to copying and/or witness fees. Therefore, Plaintiff's request for free copies of documents is denied. If Plaintiff wishes to obtain copies of filings from the Court, the Clerk will compute the amount Plaintiff must prepay, at a cost of $0.50 per page, in order to obtain such copies.

## VIII.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 6) is **GRANTED**;[11] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire

---

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915[12]; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that Plaintiff's § 1983 claims for monetary damages against defendants in their official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) First Amendment Free Exercise and RLUIPA claims related to Plaintiff's religious freedom; (2) First Amendment claims related to the right to petition; (3) First Amendment retaliation claims; and (4) claims related to the "unwritten" social media ban;[13] and it is further

**ORDERED** that Plaintiff's First Amendment claims related to freedom of association claims against Annucci, McKoy, Miller, and Barringer survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response; and it is further

**ORDERED** that Elmi is **DISMISSED** as a defendant herein; and it is further

---

[12]     "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[13]     If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that Plaintiff's request for class certification is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket to terminate "those similarly situated" as plaintiffs in this action; and it is further

**ORDERED** that Plaintiff's motion for preliminary injunctive relief (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 2) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for copies (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be**

**stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

　　　　**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 19, 2019
　　　　Albany, New York

Mae A. D'Agostino
U.S. District Judge