UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DONTIE S. MITCHELL,

                                        Plaintiff,

        vs.                                                          9:19-CV-718
                                                                     (MAD/ML)

ANTHONY J. ANNUCCI, *Acting Commissioner,*
*sued in his individual and/or official capacities*; JEFF
MCKOY, *Deputy Commissioner, sued in his*
*individual and/or official capacities*; CHRISTOPHER
MILLER, *Superintendent, sued in his individual*
*and/or official capacities*; and DAVID BARRINGER,
*Deputy Superintendent, sued in his individual and/or*
*official capacities*,

                                        Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

DONTIE S. MITCHELL
12 Tyler Street
1st Floor
Troy, New York 12180
Plaintiff *pro se*

OFFICE OF THE NEW YORK                     HELENA O. PEDERSON, AAG
STATE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
Attorneys for Defendants

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        Plaintiff commenced this action by filing a complaint asserting claims arising out of his

confinement in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS").  *See* Dkt. No. 1.  As relevant here, this action stems from Defendants

refusal to permit Plaintiff to form a chapter of the Ujamaa Fraternal Dynasty ("UFD") at Great

Meadow Correctional Facility ("Great Meadow C.F.").  Plaintiff describes the UFD as a "mutual

self-improvement fraternity of like minds, both men and woman, joined together in brotherhood

and sisterhood to achieve mutual success and prosperity," which he founded on July 29, 2008.

Plaintiff further describes the UFD as "devoted to Black socio-economic empowerment,

organizing Black people for wealth and power."  He states that "[p]art of UFD's social platform is

to prevent youth violence, crime, and drug use.  UFD does so by establishing fraternal bonds

between and among its members.  From this fraternal relationship, UFD is able to implement its

practice of self-improvement where its members push and challenge each other to do better, be

better, and know better."  Upon being denied permission to form a UFD chapter as an inmate

organization at Great Meadow C.F., Plaintiff continued his attempts to promote UFD in violation

of DOCCS rules, resulting in Tier II and III charges.  Plaintiff commenced this action challenging

DOCCS' refusal to give him permission to form a UFD chapter at Great Meadow C.F.

By Decision and Order filed July 18, 2019 (the "July Order"), the Court reviewed the

sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and

directed Defendants Anthony Annucci, Jeff McKoy, Christopher Miller, and David Barringer to

respond to Plaintiff's First Amendment Freedom of Association claim.  *See* Dkt. No. 12.  The

Court dismissed the following claims, without prejudice: (1) First Amendment Free Exercise and

RLUIPA claims related to Plaintiff's religious freedom; (2) First Amendment claims related to the

right to petition; (3) First Amendment retaliation claims; and (4) claims related to the "unwritten"

social media ban.  *See id.*  In the July Order, the Court also denied Plaintiff's motions for

preliminary injunctive relief and for the appointment of counsel.  *See id.*

On August 1, 2019, Plaintiff filed a motion to reconsider the portion of the July Order that denied his request for injunctive relief and a second motion for counsel. *See* Dkt. Nos. 14 and 21. In a Decision and Order dated August 30, 2019 (the "August Order"), the Court denied Plaintiff's motions. *See* Dkt. No. 27.

In a Decision and Order dated December 5, 2019 (the "December Order"), the Court addressed another round of motions filed by Plaintiff. *See* Dkt. No. 51. Specifically, the Court addressed the following motions: (1) Plaintiff's motion to file an amended complaint, as of right; (2) Plaintiff third motion for counsel; (3) Plaintiff's motion to reconsider the August Order; (4) Plaintiff's motion for depositions and for the appointment of an expert; and (5) Plaintiff's renewed motion for a temporary restraining order. *See* Dkt. Nos. 29, 32, 33, and 37. In its initial review of the amended complaint, the Court again found that the First Amendment Freedom of Association claim against Defendants Annucci, Miller, McKoy, and Barringer survives initial review and requires a response. *See* Dkt. No. 51 at 4. However, as to Deputy Superintendent Melecio, the Court found that Plaintiff failed to allege facts demonstrating that he was personally involved in any alleged constitutional deprivation and dismissed all First Amendment claims against him. *See id.* As to Plaintiff's First Amendment religious claims, RLUIPA claims, and right to petition, the Court held that the amended complaint failed to remedy the pleading deficiencies identified in the July Order and again ordered these claims dismissed. *See id.* at 5. Additionally, the Court found that the retaliation claims against Defendants Miller, Barringer, Elmi, and Annucci are identical to the claims previously dismissed, without any additional factual allegations. *See id.* at 6. Therefore, for the reasons set forth in the July Order, the Court again dismissed these claims. *See id.* Moreover, the amended complaint contained a new retaliation claim against Defendant Reynolds, which the Court dismissed for failure to state a claim based on the conclusory nature of

the allegations. *See id.* at 6-7. As to the claims regarding an "unwritten" social media ban, the Court again found that Plaintiff failed to plead facts suggesting that any of the named Defendants were personally involved in the decision to confiscate Facebook materials in 2016 and 2017 and dismissed the claim. *See id.* at 7-8. The Court also dismissed Plaintiff's requests for injunctive relief and for monetary damages for claims related to the Free Exercise Clause, RLUIPA, the right to petition, and retaliation. *See id.* at 8. As to the class action claims in the amended complaint, the Court again noted that class action claims cannot be maintained by a *pro se* litigant. *See id.* at 8-9. Finally, as set forth more fully in the December Order, the Court denied the other pending motions. *See id.* at 9-15.[1]

On April 6, 2021, Defendants moved for summary judgment on Plaintiff's remaining claims. *See* Dkt. No. 162. In their motion, Defendants contend that Plaintiff's requests for declaratory and injunctive relief are now moot since he has been released from DOCCS custody. *See* Dkt. No. 162-1 at 11-12. Further, Defendants argue that Plaintiff has failed to establish the personal involvement of Defendants Annucci and Barringer. *See id.* at 12-14. Finally, Defendants contend that Plaintiff's First Amendment Freedom of Association claim fails on the merits or, in the alternative, that they are entitled to qualified immunity. *See id.* at 15-20. Plaintiff has cross-moved for summary judgment and responded to Defendants' pending motion. *See* Dkt. Nos. 165 & 167.

In a Report-Recommendation dated January 20, 2022, Magistrate Judge Lovric recommended that the Court grant Defendants' motion and deny Plaintiff's cross-motion. *See* Dkt. No. 190. Specifically, Magistrate Judge Lovric found that Plaintiff's requests for declaratory

---

[1] The Court notes that this is just a brief recitation of the procedural history of his case, which has required the Court to repeatedly address repetitive motions filed by Plaintiff repeatedly seeking relief that the Court had previously denied.

and injunctive relief are moot because Plaintiff was released from incarceration on September 9, 2021. *See id.* at 27-28. Therefore, Magistrate Judge Lovric found that Plaintiff is no longer in a position to form a Great Meadow chapter of UFD (or at any other DOCCS facility) and further cannot be subject to disciplinary action for his unauthorized promotion of UFD. *See id.* Next, Magistrate Judge Lovric found that Plaintiff's request for monetary damages against Defendant Annucci and Barringer must be dismissed because the record lacks any evidence establishing their personal involvement. *See id.* at 28-29. Finally, although Magistrate Judge Lovric found that material questions of fact exist with respect to Plaintiff's freedom of association claim, he nevertheless recommended dismissal based on qualified immunity. *See id.* at 32-34. Based on the recommendation to grant Defendants' motion for summary judgment in its entirety, it was recommended that the Court deny Plaintiff's cross-motion for summary judgment. *See id.* at 35.

In objections dated February 1, 2022, Plaintiff contends that his claim is not moot because, even though he has been released from custody, he seeks to continue to communicate and associate "with incarcerated members and prospective members of UFD, and to propagate and promote UFD to them." Dkt. No. 192 at 1. Plaintiff notes that Defendants' failure to "recognize and approve prison chapters of UFD" has severely restricted his right to associate with incarcerated members, including an inmate who was recently issued a misbehavior report "simply for writing a letter expressing how UFD has helped him." *Id.* (citing Dkt. No. 186). Plaintiff concludes that "[j]ust because I am no longer in prison does not mean I no longer have an interest in propagating and promoting UFD in prison. But if my incarcerated UFD brothers are going to be disciplined for this, then it affects my right to communicate with them about UFD." *Id.* at 1-2.

As set forth below, Defendants' motion for summary judgment is granted.

## II. BACKGROUND

For a complete recitation of the relevant factual background, the Court refers the parties to

Magistrate Judge Lovric's January 20, 2022 Report-Recommendation.  *See* Dkt. No. 190.

### III. DISCUSSION

**A.      Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the

district court "make[s] a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

However, when a party files "[g]eneral or conclusory objections, or objections which merely

recite the same arguments [that he] presented to the magistrate judge," the court reviews those

recommendations for clear error only.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846,

*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the

court may accept, reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at

36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the

court is required to resolve all ambiguities and draw all reasonable inferences in favor of the

nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the

motion or fails to dispute the movant's statement of material facts, the court may not rely solely

on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to

evidence in the record support the movant's assertions.  *See Giannullo v. City of New York.*, 322

F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the

motion for summary judgment "would derogate the truth-finding functions of the judicial process

by substituting convenience for facts").

 "Assessments of credibility and choices between conflicting versions of the events are

matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426

F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477

U.S. at 252 (emphasis and alterations in original)).  "To defeat summary judgment, therefore,

nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to

the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated

speculation.'" *Id.* (quotations omitted).

 "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than

that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289,

295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations

omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances

to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a

legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "However, this

does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## B.      Findings Not Objected To

Plaintiff has not objected to Magistrate Judge Lovric's findings that (1) Defendants Annucci and Barringer were not personally involved in the alleged conduct; and (2) that Defendants are entitled to qualified immunity as to Plaintiff's claim for monetary damages on his freedom of association claim.  *See* Dkt. No. 192 at 1-2.  Having reviewed those findings for clear error, the Court finds that Magistrate Judge Lovric correctly determined that Defendants Annucci and Barringer were not personally involved in the alleged constitutional violation and that Defendants are otherwise entitled to qualified immunity on Plaintiff First Amendment Freedom of Association claim.

As to Defendants Annucci and Barringer, Magistrate Judge Lovric correctly determined that the undisputed facts establish that they were not personally involved in the decision to deny Plaintiff's request to form a chapter of UFD at Great Meadow C.F.  Defendant Annucci's sworn declaration makes clear that he had no responsibility for reviewing requests from inmates seeking to create an Inmate Organization and Plaintiff's conclusory assertions to the contrary are insufficient to create a question of fact.  *See* Dkt. No. 162-11 at ¶ 16.  Moreover, Defendant Barringer's declaration makes clear that he became the Deputy Superintendent of Programs at Great Meadow C.F. in May 2018, after Plaintiff's request had already been reviewed and denied.

*See* Dkt. No. 162-14 at ¶¶ 12-14.  As such, Magistrate Judge Lovric correctly determined that, to the extent that Plaintiff seeks money damages against Defendants Annucci and Barringer, those claims must be dismissed due to their lack of personal involvement.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983") (citation omitted).

Additionally, the Court finds that the remaining Defendants are entitled to qualified immunity on Plaintiff's First Amendment Freedom of Association claim.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* at 11-12 (quotation omitted).  "'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 12 (quotation omitted).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quotation omitted).

Here, Magistrate Judge Lovric correctly determined that Defendants are entitled to qualified immunity.  *See Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999) ("Without Second Circuit or Supreme Court authority defining with reasonable specificity [the plaintiff's] right to form an inmate legal services organization, [the defendants] are entitled to qualified immunity" with respect to the plaintiff's claim for monetary damages); *Herring v. N.Y.S. Dep't of Corr. Servs.*, No. 05-cv-4504, 2007 WL 2589496, *1 (S.D.N.Y. Sept. 6, 2007).  Here, the Court notes that Defendants provided a number of reasons as to why Plaintiff was denied permission to form a Great Meadow chapter of UFD, including the following: (1) the UFD would be duplicative of the

African Cultural Organization ("ACO"), an Inmate Organization that had already been vetted and approved at Great Meadow; (2) the UFD encouraged rebellious behavior by its members; (3) an internet search of the UFD showed that it condoned extremism and the use of violence to achieve its goals; (4) the request was incomplete and lacked sufficient detail about the UFD's proposed activities and goals; (5) the target membership listed in the request was not obtainable; (6) a staff advisor was not identified; and (7) Great Meadow already offered a wide variety of Inmate Organizations that would provide similar opportunities for membership. *See* Dkt. No. 162-12 at ¶ 15; Dkt. No. 162-13 at ¶¶ 16-17; Dkt. No. 162-5 at 10-11. In conducting internet research on the UFD, the following information was uncovered and sent in an internal memorandum in response to Plaintiff's requests: "Per documentation found in reference to this group, it states in the 'New Afrikan Declaration of Independence,' and the 'New Afrikan Creed,' the formation of a revolution for a new society. It further states that a fundamental way to gain power is to build a Sovereign New African Nation, members will give their lives as necessary." Dkt. No. 162-5 at 11. The memorandum concludes by not recommending approval of a Great Meadow chapter of UFD since "such statements contain a notion of the use of violence." *Id.* Given the concerns expressed, the Court finds that it was objectively reasonable for Defendants to believe that they were acting in accordance with established law and not violation Plaintiff's rights. As such, Magistrate Judge Lovric correctly determined that Defendants are entitled to qualified immunity insofar as Plaintiff seeks monetary damages for the alleged violation of his right to freedom of association.

**C.    Plaintiff's Claim for Declaratory and Injunctive Relief are Moot**

In his January 20, 2022 Report-Recommendation, Magistrate Judge Lovric determined that Plaintiff's September 9, 2021, release from custody rendered his requests for declaratory and

injunctive relief moot.  *See* Dkt. No. 190 at 27-28.  Specifically, Magistrate Judge Lovric found

that, because of his release, "Plaintiff is no longer in a position to submit a request to form a Great

Meadow chapter of UFD (or at any other DOCCS facility) and thus, will not be subject to any

action (i.e., disapprovals) that could be taken in response to such a request." *Id.* at 27 (citations

omitted).  In his objections to this finding, Plaintiff contends that Magistrate Judge Lovric failed

"to recognize not only my right to expressively associate but to also intimately associate with

incarcerated members and prospective members of UFD, and to propagate and promote UFD to

them."  Dkt. No. 192 at 1.

It is well settled that an inmate's transfer to a different prison facility or his release from

custody generally moots claims for declaratory and injunctive relief based on conditions of

confinement and prison regulations.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)

citations omitted); *see also McAlpine v. Thompson*, 187 F.3d 1213, 1218 (10th Cir. 1999) (noting

that "every circuit to consider the issue has decided that release to parole moots a claim regarding

prison conditions and regulations, as opposed to parole procedures or conditions and regulations

that affect parole") (citing cases); *Freeman v. Johnson*, 961 F.2d 211 (4th Cir. 1992) ("Where a

party seeks solely equitable relief concerning prison conditions or regulations, and is

subsequently paroled, the claims are moot"); *McKinnon v. Talladega County, Ala.*, 745 F.2d

1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail

moots his individual claim for declaratory and injunctive relief"); *Wirsching v. Colorado*, 360

F.3d 1191, 1196 (10th Cir. 2005) (holding that the plaintiff's request for an order requiring prison

officials to permit him visitation with his children and the opportunity to earn good-time credits at

a higher rate became moot upon his release from custody since the entry of a declaratory

judgment and injunctive relief in his favor "'would amount to nothing more than a declaration that he was wronged'") (quotation omitted).

Here, Plaintiff challenged the denial of his attempt to form a UFD chapter while incarcerated.  He is no longer incarcerated and, as such, has no right to under the regulation at issue – DOCCS Directive No. 4760 – to request permission to form an inmate organization. Moreover, since he has been released from custody, Plaintiff is no longer subject to Prison Rule 105.14, which prohibits prisoners from possessing and distributing materials regarding an unauthorized organization.

The Court also finds that this case does not fall within the narrow "capable of repetition, yet evading review" exception to the mootness doctrine.  That exception only applies where two circumstances are simultaneously present: "'(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'"  *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (quotation omitted).  Plaintiff satisfies neither of these conditions.  Plaintiff has not shown (nor could he) that time between a challenge to a prisoner being denied the right to form an inmate organization and his release from custody is always so short as to evade review. Additionally, courts have consistently refused to find that the hypothetical possibility that a former inmate on supervised release will violate the terms of his release and be returned to prison sufficient to satisfy the second condition.  *See, e.g.*, *McAlpine*, 187 F.3d at 1218 (refusing to "speculate that [the plaintiff] will break the law or otherwise violate the conditions of [the] release agreement") (citing *Knox v. McGinnis*, 998 F.2d 1405, 1412-15 (7th Cir. 1993)).

Plaintiff contends that this case is not moot because he wishes to continue speaking with incarcerated individuals about UFD.  While Plaintiff may desire to do so, this action was filed to

challenge the alleged unconstitutional application of prison regulations which no longer apply to Plaintiff. Plaintiff cannot expand the scope of this litigation to contest any challenges he may have communicating with incarcerated individuals now that he has been released from custody. Plaintiff complains that, since UFD is still considered an unauthorized organization by DOCCS, this restricts his ability to communicate with incarcerated UFD members and prospective members since those individuals "can be disciplined for communicating with [him] about UFD." Dkt. No. 192 at 1. Again, however, Plaintiff's ability to communicate with those still incarcerated about UFD is beyond the scope of this action. Further, Plaintiff would not have standing to pursue a claim on behalf of those incarcerated individuals who may be disciplined for possessing UFD materials.

Accordingly, the Court finds that Plaintiff's remaining requests for injunctive and declaratory relief are moot and Defendants' motion for summary judgment must be granted in its entirety.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Lovric's January 20, 2022 Report-Recommendation (Dkt. No. 190) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 162) is **GRANTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment (Dkt. No. 165) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 14, 2022
Albany, New York

Mae A. D'Agostino
U.S. District Judge